UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO._____

Case: 1:20-cv-01863
Assigned To : Unassigned
Assign. Date : 7/6/2020
Description: PRO SE GEN CIV (F-DECK)

AMY MISCHLER

v.

MIKE PENCE, VICE PRESIDENT OF THE UNITED STATES,
ALEX AZAR, SECRETARY OF THE FEDERAL DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
ATTORNEY GENERAL WILLIAM BARR,
AMBASSADOR KELLY CRAFT,
SENATE LEADER ADDISON "MITCH" MCCONNELL,
SIXTH CIRCUIT CHIEF JUDGE R. GUY COLE JR.
KENTUCKY FORMER GOVERNOR MATT BEVIN,
CHRISTY TROUT VAN TATENHOVE,
F.B.I. AGENT SHANE BAUMGARDNER,
JOHN DOE,
FLORIDA GOVERNOR RON DESANTIS.

## VERIFIED COMPLAINT FOR REMEDY, DAMAGES AND DEMAND FOR JURY

Now comes the Plaintiff, Amy Mischler hereinafter Ms. Mischler who requests remedy,

damages and demands a jury trial against the named Defendants.  She also requests injunctive

relief against an Executive Order issued 6/17/2020.

## NOTICE GIVEN TO PRESIDENTS ATTORNEY PAT CIPPOLONE

Ms. Mischler requested redress from President Trump multiple times, including a letter to

the President's attorney Pat Cipollone at the White House in April of 2020 in addition to notice

given to A.G. Barr in the spring of 2019.  The Presidential silence on the F.B.I. being used as

political gestapo with no legitimate purpose to harass, intimidate, entrap and try to coerce

documents from an ordinary American citizen; President Donald Trump's silence is deafening.[1]

---

[1] If the F.B.I. 302's are ever disclosed, or even exist from the June 3, 2018 harassment which could show President Trumps involvement;  President Trump has full civil immunity as the Plaintiff understands it.

## INTRODUCTION

1.   This is a Bivens Action, 42 U.S.C. 1985 Civil Action, Declaratory Action and Injunction Request.

2.   July 3, 2018: F.B.I. Special Agent Shane Baumgardner out of the Fort Myers Florida division and another man, John Doe claiming to also be an F.B.I. Agent under a *publicly known impossible false pretense* came to Ms. Mischler's home at 1120 Palm Court Okeechobee Florida to entrap, harass, intimidate, retaliate and unlawfully coerce to obtain documents lawfully in her possession.

3.   United States Vice President Mike Pence abused his authority to send the Department of Justice Federal Bureau of Investigation to be used as a political gestapo against Ms. Mischler. V.P. Pence did so because of ongoing conspiracy to constructively repeal the Affordable Care Act through an HHS Medicaid Waiver to Kentucky.

4.   Co-conspirator Kentucky Governor Matt Bevin, four days earlier on June 28, 2018 through his Administrative Assistant LeeAnn Veatch discovered that Ms. Mischler retained copies of state documents that Kentucky had destroyed; committing obstruction of justice which showed Kentucky committing fraud of 42 U.S.C. 5106a.[2] The litigation was currently ongoing. John Doe demanded Ms. Mischler to make copies and "voluntarily" send those documents to the F.B.I. in a nearly organized binder.

5.   The second man with Agent Baumgardner, Defendant John Doe before leaving demanded Ms. Mischler to voluntarily give Kentucky DCBS documents in her possession to the F.B.I.

---

[2] All child welfare funding is based on statistics. The more open cases receiving services means that KY DCBS receives more federal funding. KY DCBS was falsifying records in order to falsify the statistics. Everything is hidden under a cloak of confidentiality unlike criminal convictions; the public may never know that they are listed by KY DCBS and reported to Federal authorities as a child abuser. Administration for Children and Families refuses to hold KY DCBS accountable for anything even after noticed.

Kentucky destroyed it's originals; V.P. Pence instructed the F.B.I. to obtain Ms. Mischler's copies to *give to Kentucky Governor Matt Bevin for use in litigation where there was no discovery* for Bevin to obtain the documents. In the alternative, Kentucky Governor Matt Bevin sent a Kentucky it was a F.B.I. legitimate investigation. LeeAnn Veatch the assistant for Kentucky Governor Matt Bevin, and the wife of disgraced FEMA Director John Veatch who misappropriated over a hundred thousand dollars for his boss' personal use; Veatch found on June 28, 2018 the records still existed. Four days later on July 3, 2018 the Federal Government sent the F.B.I. on a goose chase to Amy Mischler's home to fetch the records for Veatch's boss Matt Bevin.

6.      Kentucky from 2006 until 2016 was claiming to provide child welfare services to Ms. Mischler. Ms. Mischler was told by Kentucky that she had no substantiations and all cases against her were closed in 2007. She moved to Florida in 2010.[3] In 2016, Ms. Mischler did an open records requests which showed she had two open cases and newly created case substantiating child abuse against from 2002 and two closed cases. Ms. Mischler never received any Constitutional Due Process Notice.

7.      Ms. Mischler believes she is still listed on the Adam Walsh Child Abuse database as a child abuser though she has never been charged with a crime, never been served with a dependency notice, and never received Constitutional Due Process of Kentucky of being placed on the Kentucky child abuse List. There is no better way to harm a private citizens credibility than to be placed on a child abuse list so Federal and State officials will not listen to cries for redress.

8.      Ms. Mischler was caring for her elderly father who entered the hospital in October 2018. Before this date, her father had assigned her a power of attorney and also durable medical power

---

[3] Having an open child abuse case means that Kentucky Social Workers are required to do monthly home visits both to the victims and to the accused. Not one single home visit was completed at any time to Ms. Mischler; yet Kentucky was receiving funding from Federal Department Health and Human Services as if the monthly home visits were completed from 2006 until believed to be 2016. It's possible that billing went on beyond 2016 because Kentucky refused to grant Ms. Mischler an administrative hearing required to allow her to address these issues.

of attorney over her father. Florida in coordination with Kentucky, falsified its Social Worker state records to stated that Ms. Mischler was mentally ill when she requested an adult services investigation of the hospital which medically neglected her father to cause egregious bedsores, so badly his testicles had spots of infection. She believes Kentucky bribed her brother Ralph Mischler Jr. and gave him falsified Kentucky records stating she was a child abuser to influence the hospital works to constructively deny her legal authority over her elderly father without court filings. Kentucky uses welfare and social security as political incentives; if you are on the local politically correct side you get benefits, if not- no services/benefits for you. It's like communism.

9. The same brother has called the Glades County Sheriff's Department on frivolous grounds to investigate Ms. Mischler and threatened her with arrest on voice mail. The new Executive Order by President Donald Trump endangers Ms. Mischler, a law abiding citizen will be subject to more falsified Florida Social Worker records when Ralph Mischler Jr. resumes his harassment.

10. Sec. Azar was noticed that Kentucky failed to comply with 42 U.S.C. 5106a mandates despite his required duty under 42 U.S.C. 5108. There has been ZERO OVERSIGHT for over a decade by HHS Sec. over child welfare funding. Further, HHS Office of Civil Rights says that white people in Kentucky do not have the right to file civil rights violations with the HHS Office of Civil Rights, which Ms. Mischler did in 2007 noticing and requesting redress of a timely due process violation. Thus, at all time the Federal Authorities have known about Kentucky defrauding Child welfare funding and denying fundamental civil rights to Kentucky Citizens but took no action.

11. The Kentucky Supreme Court is financially dependent on Administration of Children and Families "court improvement grants" which is really a type of official bribe for Kentucky Judges to ignore Kentucky violating child welfare laws also administered by Administration of Children

and Families. Every family law case has a judge whose administration overseeing him/her has a financial interest in the outcome.[4]

12.     The Kentucky Supreme Court also issued a nonpublished Administrative Order that changed the civil rules of procedures for cases where a senior judge was assigned.

13.     The Sixth Circuit Court of Appeals has unpublished rules that change the Federal Rules of Appellate Procedure for Pro Se plaintiffs like Ms. Mischler that allows a senior staff to write memorandums of law with incorrect facts of which the panel doesn't read the pro se brief, but the factually incorrect memo.

14.     The Sixth Circuit Court of Appeals has also issued a local rule addition under Rule 45 that allows the Clerk of the Court to act as a judicial officer to decide motions.[5]

15.     Ms. Mischler's ex husband is an attorney who gained knowledge of a state funded entities insurance fraud and used this knowledge as leverage to ensure he would not have to pay child support and could control his former wife. This includes Kentucky mixing domestic violence cases found under Kentucky Revised Statute Chapter 403 with child dependency cases found Kentucky Revised Statute Chapter 600, with Kentucky Revised Statue Chapter 430 which is the

---

[4]Kentucky judges are often the harshest on out of state parents whose child custody jurisdiction is retained in KY. Tenn. Resident Amiee Andree was put in jail and her children immediately in foster care with Chapter 600 requirements because she and her husband wouldn't agree on child custody. Tenn. Resident Kimberly Coffey Harris was also put in jail on criminal contempt but in Warren County. Her ex husband, a KY resident who had child custody of their teenage son Christian; beat him. Harris exposed the hypocrisy of the Warren Court putting Christian in foster care instead of KY criminally charging the father for assault. Anthony Brown, a Florida dad with custody two of his three children; his KY DCBS records are filed in his wife's name and number because obviously, KY does not have jurisdiction over allegations in Florida. His KY DCBS records document the judge and the social worker planning to put his children in KY foster care when he was to arrived in KY on a motion to require his wife to hand over their son because school was starting. Brown's children were in KY foster care for weeks before KY ever filed a Chapter 600 case alleging abuse against him. The three children spent a year in foster care for no reason other than KY wanted to draw federal funding. How much did it cost Mr. Brown to travel back in forth from Florida to Kentucky, hire a Kentucky attorney, spend nights in a hotel with Kentucky never having jurisdiction over the nonsense allegations against him? Further the Sixth Circuit was noticed that Kentucky was claiming jurisdiction over actions taking place in Florida and was willfully blind.

[5] The Kentucky Supreme Court and the Sixth Circuit Court of Appeals deficiencies have allowed this egregious case to come before the D.C. District because these courts were fully aware of the constitutional violation of Ms. Mischler's parental rights and took no action to restore law and order.

private child custody case against parents. The social worker that started Ms. Mischler's nightmare is personal friends with Ms. Mischler's ex husband who never disclosed the conflict of interest.

16.     Attorney General William Barr was noticed in spring of 2019 and took no action to address the Trump Administration using the F.B.I. as it's personal political gestapo.

17.     The F.B.I. FOIA division refuses to release Ms. Mischler's 302's until 2021 in order to avoid civil liability of the F.B.I. due to passing of statute of limitations. These 302's, if they exist and are unaltered will show who sent the F.B.I. to harass Ms. Mischler.

18.     D.O.J. employees were aware of the Medicaid Waiver conspiracy to constructively repeal the Affordable Care Act by the Trump Administration as admitted in a footnote that the waiver case was expected to be filed in Kentucky and assigned to Article III Judge Greg Van Tatenhove.

19.     D.O.J. ignored bribery of Judge Greg Van Tatenhove by Kentucky Governor Matt Bevin giving the Judges live in lover a job in return for favorable judicial rulings.

20.     D.O.J. ignored that the local Chief Judge Karen Caldwell was involved in the bribery scheme and wrote the local rules to ensure all of Kentucky Governors Bevin's cases were funneled to Judge Greg Van Tatenhove. D.O.J. also ignored Judge Caldwell stalking Ms. Mischler on social media and that the Judge had set up the perfect way to communicate with Gov. Bevin through a secret twitter account following/followee to his chief of staff.

21.     The F.B.I. had an open investigation of multiple judges in Eastern Kentucky involving child custody being decided on local politics instead of the rule of law. U.S. Attorneys for the Eastern District of Kentucky refused to prosecute the criminal conduct because it could politically jeopardize their ambitions to become Federal Judges; this includes Judge Greg Van Tatenhove and Judge Amul Thapar. Kerry Harvey who followed Amul Thapar as U.S. Attorney for the Eastern District of Kentucky was the Office of Inspector General for Kentucky Cabinet for Health and

Family Services who failed to take any action over the death of 70 children under Kentucky Cabinet for Health and Family Services in a short period while Harvey was OIG. A million dollar open record fine was levied against the General Counsel for the Kentucky Cabinet for Health and Family Services for unlawfully withholding social service records from Kentucky News Papers; records that should the majority of the deaths were preventable by the Kentucky Cabinet for Health and Family Services. There was no action by Federal Prosecutors in Kentucky to address the fraud by the Kentucky Cabinet for Health and Family Services. The U.S. Attorney of the Western District of Kentucky also failed to take action over a 2007 OIG Report issued by Kentucky Cabinet for Health and Family Services that substantiated findings that Kentucky's Cabinet was insufficiently compliant with record keeping and that system allowed social workers to frequently falsified records before and after allegations. There are many videos available on social media by Reporter John Boel making public that the Kentucky child welfare system was criminally culpable including Kentucky social workers admitting that wealthy infertile people were placing orders for healthy, but poor children with the local social workers office to be seized by Kentucky and adopted to the infertile wealthy family.

## JURISDICTION AND VENUE

22.     This is an action for damages in excess of the amount of $75,000.

23.     This Court has subject matter jurisdiction as a private right under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971) to redress violations of the U.S. Constitution and under 42 U.S.C. 1985.     Further, Ms. Mischler seeks declaratory relief which conveys jurisdiction via the Declaratory Judgement Act.

24.     Venue is impossible in Kentucky as there is judicial bribery scheme that federal judicial in Kentucky was aware of and took no action to stop. Where at least one Defendant resides in the

District of Columbia; venue is proper. Further, a substantial part of the acts forming the basis of the claims occurred in the District of Columbia. See 28 U.S.C. 1331.

## PARTIES

25.     Plaintiff Amy J. Mischler, hereinafter Ms. Mischler has been domiciled at 1120 Palm Court Okeechobee Florida 34974 since December 2010. The Commonwealth of Kentucky has repeatedly placed Ms. Mischler on its child abuse registry as a "substantiated child abuser" with no due process notice in violation of 42 U.S.C. 5106a from October 2006 with the last known incidence being 2013 backdating a child abuse substantiation to 2002. Florida Social Workers without any foundation stated in Florida DCF records of adult services that Ms. Mischler was mentally ill and covered up hospital neglect causing bedsores to her father whom she had legal authority over. *At any time, a state social worker can create a false defamatory statements against a citizen in government records which are shared with other state or federal governmental agencies without notice.*[6]

26     Defendant Vice President of the United States Mike Pence, herein after Defendant V.P. Pence is sued in his official and personal capacity. His address is The White House, Office of the Vice President, 1600 Pennsylvania Avenue N.W. Washington, DC 20500.

27.     Defendant Secretary Alex Azar, herein after Def. Sec. Azar is the Secretary of the Federal Department of Health and Human Services. This suit is against him in his official and personal capacity. His address is U.S. Department of Health and Human Services, 200 Independence Avenue, S.W. Washington, D.C. 20201.

---

[6]Neither Kentucky nor Florida, both which have been noticed took steps against social workers defaming Ms. Mischler in government records. The newly signed Executive Order by Donald Trump is dangerous to the privacy of individuals citizen because every citizen is subject to an investigation by social workers for merely unrequested law enforcement involvement.

28. Attorney General William Barr, herein after Def. A.G. Barr is the Attorney General for the United States. This suit is against him in his official capacity. His address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

29. Defendant Ambassador Kelly Craft, hereinafter Def. Amb. Craft is the United States Ambassador to the United Nations. This suit is against her in her official and personal capacity. Her address is the United States Mission to the United Nations, 799 United Nations Plaza, New York, NY 10017.

30. Chief Judge R. Guy Cole Jr., hereinafter Chief Judge Cole Jr. is the Chief Judge of the Sixth Circuit Court of Appeals. This suit is against him in his official administrative capacity. His address is 503 Potter Stewart U.S. Courthouse, 100 East Fifth Street Cincinnati, Ohio 45202. The Sixth Circuit Court of Appeals has secret non-published rules that alter the published Sixth Circuit Federal Rules of Appellate Procedure that allowed a unknown employee of the Sixth Circuit to commit fraud upon the court by rewriting Ms. Mischler's briefs without notice with incorrect facts allowing Def. Matt Bevin and his employees to escape justice due to a default judgment that Ms. Mischler is entitled in according to the Civil Rules of Procedure.

31. Defendant Kentucky former Governor Matthew Griswold Bevin, hereinafter Def. Bevin is the former Governor of Kentucky. This suit is against him in his personal and official capacity. His address as listed at his website mattbevin.com is PO Box 436374, Middletown, KY 40253.

32. Defendant Senate Majority Leader Mitch McConnell, hereinafter Def. Leader McConnell is a Kentucky Congressional Senator. Def. Leader McConnell, in his official capacity was willfully blind to deprivation of fundamental civil liberties of his Kentucky constituents with Kentucky and the Federal Health and Human Services Administration of Children and Families

committing per se fraud upon 42 U.S.C. 5106a.  His office is located at 317 Russell Senate Office Building, Washington, DC 20510

33.     Defendant Trout Van Tatenhove, hereinafter Def. Trout is a Mitch McConnell Scholar, who recently donated a quarter of a million dollars to the McConnell foundation, who has a professional and personal relationship with Article III Judge Van Tatenhove of the Eastern District of Kentucky.[7]  She is alleged to being the facial recipient of bribery proceeds of employment in a job she did not have to show up in return for her lover, now husband giving favorable judicial rulings to Defendant Bevin.  Her address as listed at the Kentucky Bar Association is PO Box 22853, Lexington, KY 40522-2853

34.     Federal Bureau of Investigation Special Agent Shane Baumgardner, hereinafter Def. Agent Baumgardner is/was stationed at the Fort Myers division of the F.B.I. Middle District of Florida Division.  His address is unknown.  He is sued in personal and official capacity.

35.     John Doe is an individual who accompanied Def. Agent Baumgardner to entrap Ms. Mischler July 3, 2018 at her home.  The F.B.I. is withholding FOIA's that was filed over a year ago that should identify John Doe.  His address and name are unknown.

36.     Florida Governor Ron DeSantis is the Governor of Florida, hereinafter Governor DeSantis.  He is sued in his official capacity for injunctive relief to prevent implementation of the Presidents Executive Order making every law enforcement investigation a social services investigation.  His address is Office of Governor Ron DeSantis, State of Florida, The Capitol, 400 S. Monroe St., Tallahassee, FL 32399-0001.

---

[7] Judge Greg Van Tatenhove is a former employee of Leader McConnell.  Defendant Leader McConnell has greatly supported TWO federal nominations of Judge Greg Van Tatenhove.  One appointment was U.S. Attorney to the Eastern District of Kentucky and the other as Article III Judge to the Eastern District of Kentucky.  Two separate EDKY U.S. Attorneys Judge Greg Van Tatenhove and Amul Thapar were provided evidence from the F.B.I. of rampant state court corruption; both refused to prosecute state court corruption because it would harm their individual chances to Federal Bench appointment.

## PARTIES INVOLVED

37.    Due to expense of litigation and or immunity the following are not included as defendants.

38.    Judge Greg Van Tatenhove is an Article III Judge of the Eastern District of Kentucky. He accepted a bribe from the waiver conspiracy cabal to rule in favor of Def. Bevin. Upon information and belief; Judge Van Tatenhove was dishonest during his nomination hearing to the bench of the status of his marriage given that Def. Trout immediately became his law clerk for three years while his divorce commenced. Further, it is believed that non-party Judge Van Tatenhove has not put on his federal judicial disclosures forms income regarding Def. Trout and free trips he is believed to have received from Def. Amb. Craft on her private jet. He has absolute judicial immunity from civil harms he has caused even despite any malfeasance under current case law.[8]

39.    Former Chief Judge Karen Caldwell is from the Eastern District of Kentucky. She was involved in a romantic relationship with Def. Leader McConnell and received his support for her nomination hearing for both U.S. Attorney and Article III Federal Judge in the EDKY. Judge Caldwell wrote the local rules for the EDKY to funnel all cases from the Frankfort Division to Judge Greg Van Tatenhove to ensure the waiver conspiracy success. She also had a secret twitter account which was discovered by Ms. Mischler when Judge Caldwell stalked Ms. Mischler on social media after Ms. Mischler exercised free speech to expose the judicial bribe. Judge Caldwell communicated her part in the waiver conspiracy through twitter follower/followee to Def. Bevin's Chief of Staff. She would claim absolute judicial immunity to civil suit.

40.    Chief Judge Danny Reeves replaced Karen Caldwell as Chief Judge of the Eastern District of Kentucky. Chief Judge Reeves has received Def. Leader McConnell's support as recently as 2017 for the Federal sentencing commission. Chief Judge Reeves was assigned to replace Judge

---

[8] Absolute Judicial Immunity needs to be revisited and overturned. The Plaintiff chooses not to fight this fight at this juncture by adding this non-parties as defendants.

Van Tatenhove by Chief Judge Caldwell. Chief Judge Reeves acted as if he had reviewed Ms. Mischler's case that Judge Van Tatenhove had dismissed with Chief Judge Reeves dismissing Ms. Mischler's case again and that nothing was amiss.[9]

41.     Ralph Mischler Jr. is the brother of Amy J. Mischler. He interfered with the hospital care of Ralph Mischler Sr. whom Amy J. Mischler had all legal authority given to her by her father and drafted and notarized by a licensed Florida Attorney before his hospitalization. Upon information and belief, Def. Bevin bribed Ralph Mischler Jr. to interfere with her father's medical care through backdated social security for disability where in July 2018, Ralph Mischler Jr. bought an expensive motorcycle he could not afford and hid its existence from his father and his sister. He is a resident of Frankfort Kentucky who has both physical and mental disabilities as a disabled veteran.

42.     Veema Sema worked for Def. V.P. Pence in Indiana. She worked as a consultant on the Medicaid Waiver drafted for the KY. She then violated her agreed recusal from the KY Medicaid Waiver as CSM Administrator for Centers for Medicare and Medicaid Services. She is part of the conspiracy to constructively repeal the Affordable Care Act through Medicaid waiver.

43.     Chad. A. Readler worked as the Department of Justice Civil Division and would have known after the fact about the judicial bribery to ensure the Medicaid Waiver Conspiracy per footnote admission. He was rewarded with appointment by the Trump Administration to the Federal Sixth Circuit Court of Appeals.

44.     Ethan P. David is an attorney working for the Department of Justice as Principal Deputy Assistant Attorney General that knew after the fact about the judicial bribery to ensure the Medicaid Waiver Conspiracy from his work on defending the lawsuit, per footnote admission.

---

[9] Chief Judge Reeves chose to be willfully blind that Def. Bevin was in default and that Ms. Mischler was entitled under the civil rules of procedure for judgment against Def. Bevin and some of his employees.

45.     Deepthy Kishore was an attorney with the Department of Justice that knew after the fact about the judicial bribery to ensure the Medicaid Waiver Conspiracy from her work on defending the D.C. lawsuit, per footnote admission. She was rewarded with appointment for promotion as an Attorney for the Office of General Counsel for the U.S. Securities and Exchange Commission.

46.     Bradley H. Cohen is an attorney working for the Department of Justice and knew after the fact about the judicial bribery to ensure the Medicaid Waiver Conspiracy on defending the D.C. lawsuit, per footnote admission.

47.     Cindy A Dunn is a Florida Social Worker Protective Investigator assigned to investigate Lawnwood Medical Center negligence causing bedsores to Ralph Mischler on October 2018. She never documented the actual bedsores. She falsified the report stating that Ralph Mischler had bedsores before he arrived at Lawnwood Medical Center- this is simply not true. He had a smaller than 2 cm rugburn that was healed completely by his death Nov. 2, 2018. The bedsores pictures taken by Ms. Mischler same day he left Lawnwood were five to six inches long. Further his testicles had mottled spots indicating that they had bedsores also from Lawnwood's intentional negligence. Ms. Mischler was physically present when Lawnwood Hospital documented the status of Ralph Mischler's back on admission. To further the cover up Dunn had Ralph Mischler Jr. who had no legal authority to sign the "notification of rights" form after the hospital allowed Ralph Mischler Jr. to threaten Ms. Mischler with physical harm and refused to remove him after she request the hospital to do so.[10] Because it fit the false narrative that "the hospital did nothing

---

[10] Lawnwood Hospital did a cat scan of Ralph Mischler Sr. in the spring of 2018 and did not tell him that he had idiopathic cirrhosis of the liver (this cirrhosis is thought to be a result of an unidentified hospital acquired infection). Instead, the HCA hospital system to which Raulerson Hospital and Lawnwood Hospital were ordering services to bill to Medicare and Mr. Mischler's private carrier instead of giving him the information he needed to actually treat his real medical conditions. For example, Dr. Chaudhary a director at Raulerson Hospital and Mr. Mischler's primary doctor tried to push Mr. Mischler into hospice claiming indications he had cancer (ruse to cover up never telling Mr. Mischler about the cirrhosis of the liver and the two hospital acquired infections ) who then, after Ms. Mischler said no, Dr. Chaudhary ordered flu shots and physical therapy for Mr. Mischler whom Dr. Chaudhary claimed was near

wrong";   without any evidence Dunn repeated as a fact that Ms. Mischler was mentally ill and falsely stated that Ms. Mischler was afraid that hospital staff would intentionally harm her father.[11]

## ACRONYMS/COMMONLY USED TERMS

48.     Kentucky Department of Community Based Services is the state agency that supervises the Kentucky Child welfare organization; KY DCBS.

49.     Federal Department of Health and Human Services is listed as HHS.

50.     Federal Administration of Children and Families, a division of HHS is listed as ACF.

51.     Kentucky School Board Insurance Trust is listed as KSBIT.

52.     Kentucky Cabinet for Health and Family Services oversees KY DCBS.  It is listed as KY CHFS.

53.     Medicaid waiver conspiracy refers to the Kentucky Medicaid Wavier which was overturned in D.C. District Court in case 1:18-cv-00152-JEB (DC District).  The individuals involved in this conspiracy are V.P. Pence, Matt Bevin, Christy Trout, Judge Greg Van Tatenhove, Amb. Craft.

54.     Judicial bribery conspiracy refers to the bribery scheme between Def. Bevin, Def. Trout, and nonparty Judge Van Tatenhove in Kentucky where in return for favorable ruling from Judge Van Tatenhove, Def. Bevin gave Def. Trout state employment in a job that she was not required to show for and she kept her private law practice at the same time.  Amb. Craft would have also been involved in the judicial conspiracy due to her close relationship with Christy Trout.

---

death.  Dr. Chaudhary billed repeatedly claiming that Mr. Mischler simply had an infected sebaceous cyst when it was a swollen spleen as discovered months later.

[11] It is common for individuals to hire outside caregivers to sit with hospital patients to ensure quality care when the family cannot be present.  Dunn turned this around and insinuated as if Ms. Mischler suffered from paranoia that hospital staff was out to murder people.  The only time Dunn spoke with Ms. Mischler face to face was in a 30 second elevator ride other than a phone call.

55.    DCF is the Social Service organization in the State of Florida that investigates adult and child abuse cases.

## FACTUAL BASIS

### I.   VIOLATION OF 42 U.S.C. 5108 BY SECRETARY OF HEALTH AND HUMAN SERVICES

56.    A scheme developed to take funding out of Social Security to support struggling state economies under the guise of "child welfare". States would take poor peoples children alleging poverty was neglect in return the Secretary of Health and Human Services, herein after Secretary would turn a blind eye that the states were violating fundamental rights of poor parents and failure to enforce the state child welfare laws that Congress mandated in the statute.

57.    Thus, the children of poor became chattel for states to seize into the states possession as "foster care children" to defraud social security while the Secretary would fail to do mandated duties under 42 U.S.C. 5108 to ensure that the states were in compliance with their own laws facially written to prevent violation of fundamental right of parents.

37.    **42 U.S. Code § 5108. Monitoring and oversight**
The Secretary **shall** conduct monitoring to ensure that each State that receives a grant under section 5106a of this title is in compliance with the requirements of section 5106a(b) of this title, which—
(1) **shall**—
(A)
be in addition to the review of the State plan upon its submission under section 5106a(b)(1)(A) of this title; and
(B)
include monitoring of State policies and procedures required under clauses (ii) and (iii) of section 5106a(b)(2)(B) of this title; and
(2) may include—
(A)
a comparison of activities carried out by the State to comply with the requirements of section 5106a(b) of this title with the State plan most recently approved under section 629b of this title;
(B)

> a review of information available on the website of the State relating to its compliance with the requirements of section 5106a(b) of this title;
>
> (C)
>
> site visits, as may be necessary to carry out such monitoring; and
>
> (D)
>
> a review of information available in the State's Annual Progress and Services Report most recently submitted under section 1357.16 of title 45, Code of Federal Regulations (or successor regulations).
>
> (Pub. L. 93–247, title I, § 114, as added Pub. L. 114–198, title V, § 503(d)(1), July 22, 2016, 130 Stat. 730.)[12]

58.   42 U.S.C. 5106a(b)(1)(2) requires a certification signed by the Governor of the state. That certification is a quid pro quo contract where the state cannot receive Federal Child Welfare funds unless the Governor certifies the state will not violate child welfare law. This certification would allow under the common law for third party beneficiaries to sue the Governor to enforce the contract if the state violated its child welfare laws.

59.   To keep state courts from overturning the scheme; ACF gave substantial grants as bribery to the state courts called "Court Improvement" grants making the state courts financially dependent on the scheme to fund salaries for state court support staff.

60.   August 28, 2008: Def. Leader McConnell was notified by Ms. Mischler that there were issues with the administration of 42 U.S.C. 5601a. Def. Leader McConnell was willfully blind He falsely wrote that the issues were state not federal. See Exhibit 1.

61.   June 25, 2008: Kentucky Governor Steve Beshear failed to sign the 42 U.S.C. 5106a Kentucky State plan but was instead signed by KY DCBS Commissioner Patricia Wilson who is not a Chief Executive Officer as claimed in the document. See Exhibit 2.[13]

62.   ACF has stated in response to FOIA that they do not have any copies of any of Kentucky State Plans under 42 U.S.C. 5106a and 5108.

---

[12] Shall emphasized by Ms. Mischler, meaning it's not an option for the Secretary to ignore the provision.

[13] Mike Leavitt, under the George W. Bush Administration was Secretary of Health and Human Services in 2008.

63.     Neither Secretary Leavitt at that time, or after the fact upon notice Def. Sec. Azar have obeyed mandatory Congressional Statutes to review or monitor Kentucky State Plans under 42 U.S.C. 5106a or 5108.

64.     This failure to comply with Congressional mandates by all HHS Secretary's has created an outrageous illegal culture of corruption with KY DCBS and the KY Family Courts, for financial gain from ACF to become a de facto "gulag" where Kentucky treats the children as chattel to deny fundamental parental rights in CHILD CUSTODY CASES BETWEEN PARENTS in addition to taking children for KY Foster Care unnecessarily for financial gain.[14]  Further, children not easily adopted are put back with actually abusive families.

65.     Secretary Azar is personally aware of the fraud of the State Plan through Ms. Mischler filing a FOIA for those plans and ACF conspiring to violate the FOIA laws to cover up the fraud. Def. Sec. Azar has taken no steps to correct the failure to enforce 42 U.S.C. 5106a or 5108 by prior Secretaries.

## II.  PERSONAL HARM TO MS. MISCHLER OF FAILURE TO ENFORCE 42 U.S.C. 5106A AND 5108 and VIOLENCE AGAINST WOMEN ACT

66.     Ms. Mischler only has two children, Zachary Don Stevens and Ulysses Tucker Lee Stevens.

---

[14] Many KY Children have died because HHS Sec. have failed to monitor or enforce the KY State Plan against KY. The saddest two deaths are Amy Dye and Kayden Branham. KY DCBS allowed Amy Dye to be adopted into an abusive home then failed to investigate after teachers called the abuse hotline stating that Amy was hungry, eating of garbage cans and smelled bad from not being bathed. Her adoptive brother killed Amy with a rock. Social workers never investigated the calls from the teachers. Kayden's mother was thirteen years old in foster care when she got pregnant with Kayden. KY DCBS took her and Kayden from the safe environment and placed them back with Kayden's grandmother, who did not have electricity and was highly suspected of drug addiction. The teen mother did the best she could and moved into a trailer with electricity with Kayden's teenage father. The only catch was she had to move out occasionally to allow meth to be made in the trailer. Kayden died an excruciating death ingesting draino left in one his cups after a meth making episode. KY Social workers never did the monthly required visit to Kayden and his mothers home and did not know she was without electricity. None of these social workers have been criminally prosecuted for failing these children despite evidence of falsifying state records in these two cases as determined by Judge Phillip Shepherd.

67.    In violation of 42 U.S.C. 5106a by violating Kentucky Child Welfare laws;  Kentucky judges, Attorney General, ex husband- Attorney Jonah Lee Stevens mixed together a fraud of legal actions to unlawfully deny Ms. Mischler child custody so Attorney Stevens wouldn't have to pay child support.

68.    Domestic Violence Actions in Kentucky are Kentucky Revised Statute Chapter 403 proceedings.  These proceedings are funded by Violence Against Women Act.[15]

69.    Child dependency/civil child abuse Actions in Kentucky are Kentucky Revised Statute Chapter 600 proceedings.  They have different legal burdens, parental protections, and time requirements than Chapter 403.

70.    Child custody between divorced parents in Kentucky are Kentucky Revised Statute Chapter 420.  It has different legal burdens, parental protections, and time requirements than 600 and 403.

71.    Jonah Stevens gained blackmail leverage over prominent politicians, [All Democrats] Greg Stumbo, Andy Beshear, Steve Beshear through a public finance insurance entity called the Kentucky School Board Insurance Trust [KSBIT] allowed the Floyd County Schools to commit insurance fraud.  Governors Beshears, both were trustees of the trust through their law firm Stites and Harbison PLLC.  The policy lapsed but was still covered and therefore defrauding KSBIT and the other Kentucky School Boards who paid into KSBIT in good faith.

---

[15] The abusers are filing domestic violence actions against their victims and the Kentucky Courts are allowing with the Eastern District of Kentucky U.S. Attorneys office and the Kentucky Supreme Court being willfully blind.  The F.B.I. pulled Ms. Mischler's case in 2007 and she was told by the Special Agent in Charge out of the London KY post that the F.B.I. saw real issues but the prosecutor wouldn't prosecute.  That U.S. Attorney was Amul Thapar who refused to prosecute the involved judges and attorneys because it would have hurt his political career of being appointed to the Sixth Circuit Court of Appeals.  Then when Amul Thapar was assigned to one of Ms. Mischler cases; he forgot to recuse until he was reminded he failed to prosecute by recusing on his own accord after he had already had a hearing and issued orders.  Had the federal authorities taken action in 2007 as requested repeatedly by Ms. Mischler; justice would have been done at that time and this lawsuit would not exist.

72.      Kentucky Judges allowed attorney Stevens treating a Chapter 403 case as a Chapter 600 dependency case giving child custody of Ms. Mischler's children to an unnamed woman, but filed in the Chapter 420 case.

73.      Then the same judge in 2006 treated a Chapter 403 case as a Chapter 600 case giving child custody back to Attorney Jonah Stevens but as if she had made a determination that Ms. Mischler was a child abuser and unlawfully ordered the KY DCBS to investigate and provide services to Ms. Mischler.[16]

74.      Kentucky has stated that a Chapter 600 case was brought against Ms. Mischler regarding child custody; She has never been served notice of a Chapter 600 case brought against her.[17]

75.      After judicial recusal, the second judge acknowledge that no claims of domestic violence were written in Attorney Stevens domestic violence petition and vacated that action.  However, Ms. Mischler was still kept under the same child custody restrictions placed by the original judge in the Chapter 430 case in violation of the KRS and case law that at that time stated that a written factual finding must be written of child endangerment in the order before supervised visitation can be ordered.

76.      Ms. Mischler, pro se timely filed notice to the Kentucky Court of Appeals, motions at the Circuit Court level (Chapter 430) and to the Kentucky Supreme Court stating that there was no factual finding written that she was a danger to her children that supervised visitation.

77.      Ms. Mischler is currently on supervised visitation at night, on advice of the child custody psychologist who failed to disclose she has independent financial contracts with KY DCBS.  This

---

[16] KY Case law states a judge cannot order social workers to provide services because it violates the separation of powers clause of the KY Constitution.

[17] Attorney General Andy Beshear admitted in pleadings at the Sixth Circuit Court of Appeal that this case was treated like a child abuse dependency case under Chapter 600.  Beshear did not file a response to Ms. Mischler show cause motion to produce the filings in a Chapter 600.  The Sixth Circuit Court of Appeals denied the motion.

child psychologist without any evidence other than conflicting falsified KY DCBS documents; states she believes Ms. Mischler has periods of paranoia. However, the child psychologists without the financial conflict of interest working with KY DCBS, that did Ms. Mischler's psychological evaluation states there is no reason why she should have supervised visitation.[18]

78.     April 2006: Shereena Hamilton [Spurlocke] required Ms. Mischler to sign a protection plan for KY DCBS. Hamilton was family friends with Attorney Stevens sister in law. The conflict of interest was not disclosed. Hamilton committed a 4th Amendment violation inspecting Ms. Mischlers home to report to attorney Stevens because she did not receive approval to open a child abuse case until October 2006.

79.     KY child welfare laws require supervision approval to open a KY DCBS case.

80.     See 1:2019cv02937 page 67 and 67 where three cases were opened consecutively against Ms. Mischler in October 2006.

79.     June 2006: Judge Paxton ordered KY DCBS involvement in June 2006. KY DCBS refused because a judge does not have that authority.

79.     Ms. Mischler called in a report to KY DCBS of medical neglect against Attorney Stevens.

80.     KY DCBS refused to protect the children and so Ms. Mischler contacted the KY Secretary of CHFS and the KY DCBS Commissioner.

81.     ONLY after Debbie Dile, a KY DCBS investigation had a due date to report to the Secretary/Commissioner requesting an extension in October 2006, did KY DCBS open a case against Ms. Mischler and backdated cases against her including one from 2002 which was an adult protective services case. This was a total of three cases; two substantiated child abuse cases on

---

[18] If the conflicted psychologist had also done Ms. Mischler's psychological evaluation; there is no telling what false psychological conditions that she would have claimed Ms. Mischler had. The favorable psychological evaluation was mailed to KY Judge Nichols as he instructed to his office but he failed to acknowledge he had ever received it.

the same set of identical facts and an adult protective services where Attorney Jonah Stevens claimed in June 2002 that Ms. Mischler was going to commit specific acts against him in the future on August 2002. See actual domestic violence petition in 1:2019cv02937.

82.      Further Debbie Dile issued two reports that contradict each other in facts AND violate child welfare laws under 42 U.S.C. 5106a that Ms. Mischler was placed on the child abuse list without due process notice of certified letter and multiple times for the same allegation having incorrect number of child abuse allegations. Further, the Dile letters acknowledge no confidentiality in the records, also a violation of 42 U.S.C. 5106a where the hard copies are missing.

83.      42 U.S.C. 5106a requires that KY provide administrative hearings to names being placed on the defamatory Adam Walsh and state child abuse databases. Ms. Mischler was not given opportunity to have administrative hearings to overturn the DEFAMATORY and false state records that said she was a child abuser and the one time she did receive a six month late notice; she won the hearing but KY DCBS re-substantiated after they unsubstantiated due to the hearing This is another violation by 42 U.S.C. 5106a by Kentucky.[19]

84.      42 U.S.C. 5106a requires that KY follow all of its child welfare laws. Kentucky social workers are required to do monthly home visits to all open cases to children and to the accused abuser. Ms. Mischler never received a single home visit to notice her of open cases. KY kept open cases telling ACF that it was providing child welfare services to Ms. Mischler from 2007 until 2016. Ms. Mischler moved to Florida in 2010. In November 2006; without 24 hour notice and violating her confidentiality; KY DCBS called Ms. Mischler's sister Sandra Mader to help

---

[19] After an anonymous person on the internet said that KY DCBS records would impact her child custody case in March 2007; Ms. Mischler requested by certified mail copies of all substantiations. She was given only one green card certified letter of one substantiation, six months after the fact of which she did receive one administrative hearing which she won. However, KY DCBS resubstantiated it according to the records after they unsubstantiated it dur to the administrative hearing. Further, due process six months after the fact is not due process.

them carry out a fraud claiming a "family plan". Sandra Mader led Ms. Amy Mischler to believe this was required due to Judge Julie Paxton ordering services to be provided and that Ms. Amy Mischler was under a JUDICIAL ORDER TO COOPERATE with KY DCBS by Paxton. KY DCBS may hold this day to be a monthly home visit. It was not. A family plan under 42 U.S.C. 5106a required Jonah Stevens to be there along possibly with the two children if deemed age appropriate and the oldest son was. Sandra Mader was rewarded by KY DCBS with a promotion to being a "Investigator Specialist" where she was not assigned a daily case load grind but kept the nearly the same pay as her current job with substantially less stress with KY DCBS.

84b.    Debbie Dile claims in her report that Ms. Amy Mischler must have had knowledge of the substantiation of child abuse because Ms. Amy Mischler signed the family plan dated Nov. 2006. This is not true. Ms. Amy Mischler was under a court order on Nov. 2006 that required her to cooperate with KY DCBS and Ms. Mischler believed the family plan was for the still open domestic violence action 02-dv-003 that wasn't vacated until December 2006.

85.    42 U.S.C. 5106a requires that KY keep child welfare records confidential. Kentucky does not keep child welfare records confidential but states that it relies on "good faith" that state employees do not look at internal child abuse records they should not be looking at. There is no identifier on computer records which ensure good faith of the confidentiality. Thus, the purpose of making substantiations against Ms. Mischler multiple times was to make the records look legitimate to people unlawfully looking at her files. For example, Ms. Mischler has not lived in Shelby County Kentucky since she graduated from college in 1991 and lived in since her birth in

86.    To embarrass, ridicule, harass, and make publicly known; FOR NO REASON WHATSOEVER, Pike County Office under KY DCBS called up the Shelby County DCBS just for the purpose to let Shelby County DCBS know that Amy Mischler had KY DCBS records and

for the Shelby County social workers to look the records up to tell Shelby County residents. This is in the KY DCBS records that Def. Bevin destroyed and wanted to know exactly what the originals said which was the purpose of sending the F.B.I. to obtain copies from Ms. Mischler.

86a.    42 U.S.C. 5106a requires that KY follow all its child welfare laws. KY law prohibits falsifying of state documents which would apply to child welfare records. KY falsified Ms. Mischler's records so much that the records do not match each other including a false defamatory statement that said Ms. Mischler put feces in a bag and sent it to Pikeville.[20]

87.    2007 Office of Inspector General Report attached in part documented KY failing to keep child welfare laws as required by 42 U.S.C. 5106a. Neither KY, ACF or Secretary of HHS required KY to enact the recommendations to ensure compliance with KY child welfare laws and 42 U.S.C. 5106a. See Exhibit 3.

88.    Reporter John Boel many reports on social workers revealed that wealthy private citizens who were barren would "order" poor peoples children to be seized and given to the barren wealthy parents for adoption.[21] Human trafficking is unambiguously in violation of the Constitution and implicit in Kentucky Child Welfare Laws.

89.    Kentucky statutory law and case law required a written factual finding of threat of endangerment to the child in a court order before supervised visitation could be ordered at the time

---

[20] Of course, Shereena Hamilton put it in the record as if it was a fact without actually asking Ms. Mischler if she put feces in a bag and sent it to Pikeville. Ms. Mischler would have explained has Hamilton asked because Attorney Stevens failed to seek to get medical treatment for his youngest of the severe constipation that could have killed the child; the child regularly soiled his underwear and she would keep the underwear to wash after supervised visitation was over instead of sending them back soiled. After Attorney Stevens complained about not receiving the underwear back; Ms. Mischler placed the soiled underwear in a baggie with the other clothes because of the complaint. This is the identical 2018 behavior of Florida social worker Dunn who put in the records that Ms. Mischler was mentally ill without inquiring about medical health treatment. The truth is, that Ms. Mischler is not mentally ill and has never received mental health treatment the entire decade she has lived in Florida but that Ralph Mischler Jr., the person Ms. Dunn believed was mentally healthy and competent receives mental health treatment at the Lexington Veterans Administration Hospital and has made threats to kill family members as documented to the VA hospital who had to warn the family member. [not Ms. Amy Mischler].

[21] https://www.youtube.com/watch?time_continue=200&v=S36rozABiZk&feature=emb_logo

Ms. Mischler was placed on supervised visitation and kept on it without a written finding. 42 U.S.C. 5106a requires that Kentucky child welfare law to be followed. The Kentucky Supreme Court, the Kentucky Attorney General, the Kentucky Court of Appeals, all knew that Ms. Mischler was illegally placed on supervised visitation as constructive termination of her parental rights.

90.     Ms. Mischler's child custody was decided solely on the falsified KY DCBS records funded by 42 U.S.C. 5106a where there was no actual child abuse by Ms. Mischler. Further, a secret administrative order required Ms. Mischler's case to be decided "how to proceed" before hand by a meeting between the senior judge, the former judge, and the clerk of Court. Ms. Mischler never received due process notice of this meeting and the Sixth Circuit Court of Appeals refuses to require Kentucky to provide that information.

91.     Ms. Mischler has not even been allowed to speak on the telephone to her children. She has not seen or spoken with them since 2008. At all times the KY Attorney Generals Office, KY Supreme Court, and their officers were fully well aware that KY had violated child welfare laws to interfere with Ms. Mischler's fundamental rights.

92.     Ms. Mischler applied for HHS funded child insurance called KCHIP but was denied KCHIP on a made up rule stating that Attorney Stevens had to disclosed his income. The two children had no medical insurance at that time because their Attorney Father would cancel it without notice to Ms. Mischler.[22]

93.     HHS ACF funds prosecution for child support against parents. Ms. Mischler applied for child support for her two children living one half of the time with her, in June 2005. Pike County

---

[22] Ironically, Jonah Stevens stepchildren did have KCHIP insurance while they were living with him and their mother in a two story upper income home while his actual children at that time were living half the time with their mother in HUD housing and his children had no health insurance with one having preexisting health conditions. To reiterate, in Kentucky the abuser files domestic violence proceedings against the victim and the state prosecutors and judges support misogynistic conduct. Stevens was denying his children insurance as a way to harm their mother.

Attorney Howard Keith Hall refused to provide child support prosecution. Internal notes obtained through open records state not to prosecute.

94.    FBI was fully away that Ms. Mischler was denied the federal benefit of child support prosecuted against Attorney Stevens. See Exhibit 4. Def. Alex Azar shut down a recent ACF investigation against Howard Keith Hall, started because Ms. Mischler made the mistake of believing President Donald Trumps promises that he would restore law and order and hold people accountable.

95.    In 2006, Judge Paxton issued an order stating that Pike County Howard Keith Hall and the Floyd County Attorney transferred jurisdiction in a telephone call. County Attorney jurisdiction cannot be changed in a telephone call; only by a court order.

96.    In 2006, the same Pike County Attorney Howard Keith Hall had his office draft an arrest warrant for Ms. Mischler to coverup his involvement in the conspiracy to deny Ms. Mischler her parental rights. The grand jury refused to indict Ms. Mischler in 2007 on the arrest.[23] The F.B.I. and the Eastern District of Kentucky U.S. Attorney Amul Thapar refused to investigate Howard Keith Hall abusing his authority to have Ms. Mischler falsely arrested.

97.    In 2007/2008:   At a child custody hearing where Pike County Attorney Hall was subpoenaed to testify regarding his handling of the child support request. He admitted failure to follow the law but was also allowed to receive text messages from his assistant in the gallery on how to answer the questions. Judge Nichols was unconcerned when Ms. Mischler pointed the cell phone use on the stand by the witness to be in the record.

---

[23] The officer who signed the arrest warrant stated he did not know who the judicial officer was signed the arrest warrant. Obviously, the officer did not swear to the truth of the document in front of the judicial officer who the arrest warrant making the warrant illegal. Further, Hall's office falsified the one sentence leaving out that jurisdiction "at the church" was outside of Pike County where Hall had no authority.

98.    HHS requires states to keep records under 42 U.S.C. 5106a open for either twenty or twenty five years.[24] KY claims that it accidentally destroyed Ms. Mischler's KY DCBS records that began in 2007. Thus, the earliest KY could destroy Ms. Mischler's records lawfully would be in the future in 2027. The falsified defamatory computer server records that have no hardcopy evidentiary support to backup the allegations against Ms. Mischler are still available, allegedly. It's also possible that Kentucky created multiple accounts under Amy Mischlers name and the discrepancy in the records come from different accounts. Kentucky refused to allow Ms. Mischler under the open records act to view her computer server records in person.

99.    Kentucky Court records are to be held indefinitely unless destroyed by Court Order. Many of Ms. Mischler's video tape recordings, the only official courtrecord in hearings have vanished including all of the original domestic violence hearings in 2002. A federal judge refused to make KY Administrative Office of the Courts to produce the records or give a chain of control to determine what happened to them.

100.    Despite Ms. Mischler being told by KY DCBS she had no open cases (2007) and all hard copies of evidence to support computer server records destroyed, and despite the fact she moved to Florida in 2010 making it impossible to be receiving KY DCBS services; KY DCBS held out to ACF that Ms. Mischler was receiving KY DCBS as late as 2016 according to a KY DCBS email. This of course violates 42 U.S.C. 5106a. A state cannot be providing services to someone who has no knowledge of receiving services and lives out of state.

**III. DEF. BEVIN'S BROKEN PROMISES AND DISCOVERY THAT KENTUCKY HAD OPEN CHILD ABUSE CASES AGAINST MS. MISCHLER WHO MOVED TO FLORIDA IN 2010 BUT KY RECEIVING FEDERAL FUNDING TO**

---

[24] Ms. Mischler has been told two different year amounts by officials.

## PROVIDE SERVICES TO MS. MISCHLER AS LATE AS 2016.[25]

101.    Def. Bevin campaigned on the promise that he would clean up corruption in KY DCBS claiming that he himself was a victim because he was not allowed to adopt a foster child due to arbitrary KY DCBS social workers opinions.

102.    Ms. Mischler, because she had been placed without due process notice would periodically request all documents under KY open records law to ensure it had not occurred again and believed that Def. Bevin meant to keep his promise to clean up corruption in KY DCBS.

103.    **Feb. 2016**: Ms. Mischler received an open records where General Counsel Mona Womack who is notated giving legal advice in Ms. Mischler's case in 2006 records; received an email from SRA Howard that said Ms. Mischler had four total cases with two being open and two closed. This directly contradicts her original records where it stated she had three cases; one an adult protective services case (DVO) from 2002 and two cases that were a duplicate according to Debbie Dile in 2006. **See 1:2019cv02937, entire document 1 and specifically page 25** (2016 document) where Ms. Mischler had four cases with KY DCBS, **two open and two closed and page 65** (2008 document) where Ms. Mischler only had three cases.

104.    THERE WERE NO RECORDS involving Ms. Mischler in KY DCBS Records until October 2006.  This is documented in the Service Recording that did not begin until October 2006 and withhold documents not given over until 2013 that shows the case numbers were consecutive and obtained on the same day in October 2006. Thus, twice, KY DCBS has falsified backdated investigations that never took place to the year 2002.  The first was an adult protective services cases where Ms. Mischler was abused by her ex husband (2002 EPO) in October 2006 but

---

[25] The amount of funding is dependent on statistics. KY DCBS falsifys the statistics in order to receive funding. This is why KY DCBS kept open cases on Ms. Mischler thinking she would never discover the fraud.

backdated to 2002. The second was a child abuse substantiated of child abuse believed to be created in 2013 but backdated to 2002.

105.    **August 2016**: KY CHFS Deputy Secretary Timothy Feeley refused to acknowledge that KY DCBS was defrauding ACF as late as 2016 claiming open cases against Ms. Mischler for statistical and financial purposes knowing that Ms. Mischler had no knowledge of the fraud and lived in Florida since 2010.  See Exhibit 5 and 6.  KY CHFS Deputy Secretary knew that KY DCBS was created unlawful backdated cases against Ms. Mischler claiming that

106.    In Exhibit 6, the CC shows that Def. Bevin as noticed through his Jon Park who was in charge of constituent services.  Senator Rand Paul was noticed through Kathee Facchiano.

107.    Discover that KY DCBS was falsifying statistics and defrauding ACF funding endangered the ongoing Medicaid waiver conspiracy.  After Ms. Mischler sued Def. Gov. Bevin ordered KY DCBS to destroy records and then intimidated witnesses at the Johnson County DCBS office where SRA Susan Howard who wrote the 2016 email was located.  See 1:2019cv02937, page 25 and 6.

108.    KY DCBS Social Worker Shereena Hamilton [Spurlocke] had a conflict of interest and was personal friends with Ms. Mischler's ex husband Jonah Stevens.  She never disclosed the conflict of interest.[26]

109.    April 2006: Shereena Hamilton [Spurlocke] violated Ms. Mischler's 4th Amendment right to spy on the inside of Ms. Mischler's home for her ex husband, attorney Jonah Stevens.  She falsely stated she was on official business making Ms. Mischler sign a prevention plan but Hamilton [Spurlocke] did not get jurisdiction to enter Ms. Mischler's home from her supervisors until October 2006.

---

[26] The conflict of interest was discovered years later thanks to Facebook.

## IV.    SOFT COUP ATTEMPT AGAINST PRESIDENT TRUMP AND THE AFFORDABLE CARE ACT MEDICAID WAIVER CONSPIRACY[27]

110.    **August/October 2019**: In declaratory actions footnotes Ms. Mischler hinted Def. V.P. Pence's involvement but felt she did not have enough factual support to go allege involvement at that time.[28]  However, thanks to Sidney Powell posts on twitter about how the D.O.J. refused to hand over the original 302's for her client General Mike Flynn; Ms. Mischler identified the pattern by the D.O.J. also withholding her 302's which lead to discovery of enough information to allege against Def. V.P. Pence.

111.    **May 2017**: Anticipating that President Trump would be removed by 25th Amendment or the Mueller Russian probe; Def. V.P. Pence created his own political action committee to run for President in 2020.[29]

112.    In cooperation with the soft coup against President Trump by individuals within the Department of Justice; Def. V.P. Pence ***ensured the removal*** of Trump loyalist, National Security Advisor General Flynn from position by claiming Gen. Flynn lied to V.P. Pence.

113.    **November 16, 2016**:  F.B.I. Special Agent Peter Strzok and F.B.I. attorney Lisa Page already had "*Katies husband*" **Def. V.P. Pences** Chief of Staff Jack Pitcock as an infiltrator to provide information to help remove Donald Trump as President. Strzok also had a CI (confidential informant) guy and wrote that Def. V.P. Pences Chief of Staff could help "*develop for* [more] *potential relationships.*"[30]

---

[27] The official name is the Patient Protection and Affordable Care Act but is more commonly called the "Affordable Care Act, or sometimes Obamacare.  It was enacted on March 23, 2010 by the 111th United States Congress.
[28] See 1:2019cv02937 and 1:2019cv02493.

[29] https://www.businessinsider.com/mike-pence-pac-president-trump-2017-5

[30] https://www.grassley.senate.gov/sites/default/files/documents/2019-04-25%20CEG%20RJ%20to%20DOJ%20%28Surveillance%20of%20Trump%20Transition%20Team%29.pdf

114.    In hindsight, the *"developing of relationships"* was to code to ensure enough individuals to testify to Donald Trumps alleged erratic behavior in support of removing him as incompetent under the 25th Amendment.

115.    **May 9, 2017**: F.B.I. Director James Comey was fired.  Shorty after the firing, F.B.I. former general counsel James Baker testified that Rod Rosenstein told him 1) two members of President Trumps Cabinet were open to invoking the 25th Amendment to remove him from office and suggested that Rosenstein was going to wear a wire to record President Trump.[31]

116.    Under the 25th Amendment, it would only take 14 individuals to remove President Trump from office;  **Defendant V.P. Pence** and 13 of the Cabinet members.  Def. Sec. Azar is part of the Cabinet.[32]  Obviously, V.P. Pence has the most to gain from President Trump being removed.

### IV(A).  DEF. V.P. PENCES ACTIONS TO REMOVE TRUMP LOYALIST GENERAL FLYNN IN FURTHERANCE OF THE SOFT COUP

117.    **January 4, 2017 Peter Strozk's notes**: For anyone who states it's frivolous or impossible for a V.P. to conspire to coordinate an F.B.I. investigation please see1:17-cr-00232-EGS(D.C. District) Document 231, 6/24/2020. Page 1 and 2, where V.P. Joe Biden was in a conspiracy to target General Flynn with *"the right people"* at the F.B.I.  *"According to Strozk's notes, it appears Vice President Biden personally raised the idea of the Logan Act"*.

118.    **Nov. 18, 2016**: Defendant V.P. Pence is noticed by Rep. Elijah Cummings about General Flynn working for Russia and Turkey.[33]

---

[31] https://www.businessinsider.com/james-baker-rosenstein-25th-amendment-congress-testimony-2019-4
[32] https://www.businessinsider.com/25th-amendment-how-can-you-remove-president-from-office-2017-3
[33]https://www.usatoday.com/story/news/politics/2017/12/10/pence-flynn-and-russia-investigation-timeline-key-events/935046001/

119.    **March 9, 2017**: Defendant V.P. Pence lies to Fox News that he had just learned about the information Rep. Cummings provided in November 2016. Defendant V.P. Pence stands by the March 9, 2017 lie on **May 18, 2017**. See footnote 32.

120.    **December 2, 2017**: Via Social Media Twitter; President Donald Trump states that [he] "had to fire General Flynn because **he lied to Vice President** and FBI."

121.    **December 22, 2017**: Def. V.P. Pence states to Reporter Margaret Brennan that he, V.P. Pence knew that General Flynn had lied about Russian Contacts to him personally when General Flynn was fired.[34]

122.    **April 3, 2020**: Def. V.P. Pence backtracks and states that General Flynn didn't lie, but that he, Def. V.P. Pence was more inclined to now believe it was an "unintentional omission".[35] As a law school graduate, Def. Pence knows the different between 1)intentional misrepresentation, 2)intentional omission that is misleading and 3) an unintentional omission due to fatigue and multiple meetings. Instead of giving General Flynn the benefit of the doubt during the extremely busy transition periods of which he was alleged to "lie"; Def. V.P. Pence pushed the narrative that General Flynn lied because to remove President Donald Trump; loyalist Flynn had to go first.

### IV(B).    CONSTRUCTIVE REPEAL OF AFFORDABLE CARE ACT BY MEDICAID WAIVER CONSPIRACY

123.    **January 20, 2017**: President Trump vowed to repeal the affordable care act.

124.    **July 27, 2017**: Republicans having both the Senate and House failed to repeal the Affordable Care Act by replacing it with the Health Care Freedom Act.

125.    Through constructive repeal of the Affordable Care Act through the Medicaid waiver; Def. V.P. Pence would ensure funding from conservative groups such as the Koch brothers when V.P.

---

[34]https://www.cbsnews.com/news/pence-i-knew-flynn-lied-to-me-about-russian-contacts-when-he-was-fired/
[35] https://www.foxnews.com/politics/pence-inclined-to-believe-flynn

Pence became President through President Trump removed by 25th Amendment or impeachment.[36] [37]

126.    Defendants Bevin, Sec. Azar, ordered employees, including David Irvin to draft a Medicaid waiver for Kentucky that would be binding precedent and would constructively repeal the Affordable Care Act and ensure funding for Def. V.P. Pences 2020 presidential run. Non-party CMS Administer Seema Verma also worked personally on the waiver with Irvin in a consulting capacity.

127.    The biggest hurdle for the Medicaid waiver conspiracy to be successful would be review by a District Federal Court if challenged which was believed to be likely.

128.    Non-parties Department of Justice attorneys Chad. A. Readler, Ethan P. David, Joel McElvain, Deepthy Kishore, and Bradley H. Cohen who knew of the Medicaid waiver conspiracy after the fact; admitted that the conspiracy anticipated any litigation filed against the waiver would filed in Frankfort KY.[38]

129.    Success of the conspiracy to constructively repeal the Affordable Care Act through Medicaid waiver required that a favorable judge be assigned to any legal challenge filed against it. Selecting a favorable venue is ethical. Bribing a judge through employment to his paramour by a litigant for favorable judicial rulings is not ethical nor legal.

---

[36]    https://www.prwatch.org/news/2020/03/13556/koch-backed-work-rule-requirements-suffer-setback-hands-gop-governor

[37] Privately Ms. Mischler refers to the waiver conspiracy participants as the Indiana/Kentucky Cabal with members V.P. Pence (IN.), Sec. Azar (IN.), Seema Verma (IN.) Matt Bevin (KY.) Kelly Craft (KY.), Jessica Ditto (KY.) who are more concerned about their personal ambitions than following the Rule of Law. Ethical issues concerning Verma having personal consulting interest in Medicaid waivers in Kentucky has also been raised. https://www.finance.senate.gov/imo/media/doc/011918%20Wyden%20Letter%20to%20Charrow%20on%20Seema %20Verma%20Ethics%20Agreements.pdf Further, Def. Bevin "said Verma was the one to contact him" which caused a lawsuit against HHS to obtain emails between her and Bevin that would show she violated her agreement to recuse at her nomination hearing. https://talkingpointsmemo.com/dc/trumps-medicaid-chief-sued-for-e-mails-to-states-ethics-waiver-records

[38] See 1:19-cv-02937-TSC Document 1, page 11 of 77 paragraph 46. See also 1:18-cv-00152-JEB (DC District), Document 6, page 20, footnote 4.

## IV(B)(i).  FEDERAL ARTICLE III JUDICIAL BRIBERY CONSPIRACY

130.    Upon information and belief; Christy Trout practiced law in the Eastern District of Kentucky while cohabitating with Judge Greg Van Tatenhove. *The two did not marry in order to hide the relationship from the public scrutiny* where her de facto law partner Kent Wicker would practice in front of Judge Van Tatenhove, also receiving favor.[39]

121.    Def. Craft brought Def. Trout and Judge Van Tatenhove into the conspiracy to constructively repeal the Affordable Care Act by waiver.  Def. Craft and Def. Trout are personal close friends.  In return for bringing Def. Trout and Judge Van Tatenhove, Def. Craft who led U.N. delegates to believe she had financial interest in a bourbon company when they went to Kentucky; Def. Bevin appointed Def. Trout in charge of the Kentucky Alcohol Beverage Control Commissioner.  Def. Trout also appears in videos to be an unregistered lobbyist for Bourbon interests while simultaneously representing the executive branch in ethic breach allegations after being forced to resign due to the judicial bribery scheme becoming public.

122.    In return for assurance from Judge Van Tatenhove ruling favorable for any legal challenge against the waiver conspiracy; Def. Trout would receive a non-merit job from Def. Bevin where Def. Trout did not have to show up for work.  Def. Trout would also receive perks such as free trips and air flights from Kentucky and Def. Craft.

---

[39] One of the most conflicted cases of all time is USA v. Lundergan in the Eastern District of Kentucky.  The criminal case against Jerry Lundergan, whose daughter is Alison Grimes is based on Mitch McConnell opposition research. Grimes dared challenge McConnell for his Senate seat.  The prosecutor who prosecuted the case is an approved McConnell Republican Robert Duncan, who just happens to be the son of former chairman of the Republican National Committee Mike Duncan who also has current Presidential Appointments.  The judge is of course, Judge Greg Van Tatenhove who worked for Mitch McConnell and has two federal nominations where Mitch McConnell supported him for U.S. Attorney and Article III Federal Judge.  The judges now wife, Christy Trout Van Tatenhove is a McConnell scholar. AND REPRESENTING Alison Grimes campaign is none other than Christy Trout Van Tatenhove's de facto law partner, Kent Wicker because everybody knows in Kentucky if you want Judge Van Tatenhoves favor you should hire Kent Wicker.  A former McConnell Campaign worker bragged about her opposition research while working for Leader McConnel being used to convict Jerry Lundergan on twitter.

123.    Non-party former Chief Judge Karen Caldwell of the Federal Eastern District of Kentucky was brought into the conspiracy. She wrote the local rules to appear facially neutral but in fact set to funnel all civil and criminal cases filed in Frankfort Kentucky to be automatically assigned to Judge Van Tatenhove. Venue for any lawsuit waiver would require the lawsuit to be filed in the Frankfort Kentucky District because it is the state capitol and the principal place of business for Def. Bevin. Judge Caldwell would have been Def. Trout's supervisor when Trout was law clerk for Judge Van Tatenhove during his first three years on the bench.

124.    Non-party former Chief Judge Karen Caldwell had a secret twitter account to communicate with Def. Bevin's Chief of Staff to further the conspiracy. This was discovered when Chief Judge Karen Caldwell stalked Ms. Mischler on social media and "followed" Ms. Mischler alerting her.[40]

125.    Per the waiver conspiracy; Judge Greg Van Tatenhove was assigned to the lawsuit Ms. Mischler filed against Def. Gov. Matt Bevin. See 17-cv-66 (EDKY).

126.    Judge Greg Van Tatenhove extended the judicial bribery beyond the waiver conspiracy to rule in favor of Def. Matt Bevin IN ALL CASES FILED against Def. Bevin including Ms. Mischler's.[41]

127.    Nonparty, Kentucky Cabinet for Health and Family Services attorney David Brent Irvin represented Def. Bevin and other social worker defendants in 17-cv-66(EDKY).

128.    Nonparty Irvin is an attorney in the General Counsel of the KY Cabinet for Health and Family Services which applied for the waiver in the Medicaid waiver conspiracy. Irvin would

---

[40] The Sixth Circuit Court of Appeals was fully aware of Judge Caldwell's secret twitter account and stalking of Ms. Mischler and took no action. Further, the Sixth Circuit Court of Appeals has no problem with litigants and judges withholding conflicts of interest from opposing litigants.

[41] Judge Van Tatenhove's son Cooper Van Tatenhove also worked for Def. Bevin. Other issues regarding Judge Van Tatenhove's judgment is allowing white teenagers who have only finished a year of college to draft memorandums for habeas corpus petitions, statistically likely to be minorities; as long as they are white and from Cooper Van Tatenhoves notoriously white college. It is the worse case of actual White privilege Ms. Mischler has ever observed. The Sixth Circuit Court of Appeals approved of Judge Van Tatenhove's use of teenage law clerks being noticed of the conduct.

have also worked with non-party Verna when she, as a consultant worked on the Kentucky Medicaid Waiver before her nomination to CSM.

129.   Def. Bevin was served on 10/24/2017. Def. Bevin's answer was due on 11/14/17. No answer was filed until 11/28/17.[42] Irvin knew that Judge Van Tatenhove would ignore the default because of the known Medicaid Waiver Conspiracy AND THAT THE DEPARTMENT OF JUSTICE WOULD NOT PROSECUTE THE CRIMINAL BRIBERY OF JUDGE VAN TATENHOVE.

130.   Def. Bevin's employees were sued for monetary damages, they were Emily Gray Jones, Shereena Hamilton Spurlock, Deborah Webb and Zack Ousley.[43]   The answers for these defendants were due 1/4/17. Judge Van Tatenhove GRANTED A FORTY FIVE ADDITIONAL DAYS TO ANSWER to these individuals. 2/20/17 was the timely answer date with the extension but Irvin did not file a timely answer or motion to dismiss. Irvin filed a motion to dismiss on 2/23/17.[44] Irvin knew his extension would be granted because of his personal knowledge of the Medicaid Waiver Conspiracy helping to draft the waiver with co-conspirator.

### VI. SIXTH CIRCUIT COURT OF APPEALS UNPUBLISHED RULES THAT CHANGE THE PUBLISHED SIXTH CIRCUIT FEDERAL APPEALLTE RULES OF PROCEDURE

131.   Repeatedly the Sixth Circuit Court of Appeals has denied redress to poor individuals proceeding pro se against KY DCBS.

---

[42] See 17-cv-66(EDKY) docket entries 12, 30 and public notice to the Department of Justice in case 1:19-cv-02937 Document 1, page 12 of 77, paragraph 49.

[43] Ousley was not sued for damages. He replaced another attorney who covered up the KY DCBS misconduct at administrative hearing and inherited the case.

[44] See 17-cv-66 (EDKY) docket entries 45, 51, 59, 52 and Department of Justice public notice in 1:19-cv-02937 Document 1, page 11 and 12.

132. It turns out that the Sixth Circuit Court of Appeals treats the appeals of pro se litigants differently than other litigants. There is no due process notice on the website or in the FRAP Rules of this differential treatment.

133. According to esteemed retired 7th Circuit Judge Richard Posner, the Sixth Circuit Court of Appeals assigns an in house attorney who rewrites the pro se brief as memo and the judges assigned do not read the original brief. See Reforming the Federal Judiciary: My Former Court Needs to Overhaul Its Staff Attorney Program and Begin Televising It's Oral Arguments. See page 53.

134. Ms. Mischler case was assigned to an unidentified attorney who rewrote Ms. Mischler's information. This attorney falsified that Def. Bevin and others were not in default when unambiguously he was. It appears the attorney failed to put the conflict of interest between Defendants Trout and Bevin and Judge Van Tatenhove in the in house memorandum.

135. To reiterate, from paragraphs Def. Bevin was served on 10/24/2017 and his answer was due on 11/14/2017. His attorney, Irvin did not file any pleading on Def. Bevin's behalf until 11/28/2017. Ms. Mischler clearly briefed this in her pro se brief and the unidentified attorney misrepresented the issue in the attorney memorandum given thirty days before the panel met OR IN THE ALTERNATIVE THE DEFENDANTS HEREIN bribed the Sixth Circuit Court of Appeals Panel as Judge Van Tatenhove was bribed.

136. The staff attorney left out the undisclosed conflict of interest between Def. Bevin, Def. Trout and Judge Van Tatenhove or in the alternative, the Sixth Circuit Court of Appeals was bribed to ignore the conflict of interest.

137. THERE IS NO OPPORTUNITY BY pro se litigants to correct factual errors in the memorandums because no due process notice is given to the pro se litigants in the FRAP rules of this special procedure.

138.    All Pro Se litigants are being treated like second class citizens in the Sixth Circuit Court of Appeals with unappointed staff attorneys deciding pro se litigants cases in how they write the memorandums with the Sixth Circuit Court of Appeal panel rubber stamping the finding of the memorandum. Thus, pro se litigants are not actually having a Judge appointed per Constitutental requirements assigned to their cases.

140. FURTHER, Ms. Mischler was denied the opportunity of an oral argument to point out these issues before the Panel.

## VII. SIXTH CIRCUIT COURT OF APPEALS LOCAL RULE 45 IS UNCONSTITUTIONAL

141.    The Circuit Executive for the Sixth Circuit Court of Appeals is Marc Theriault. He has spoken with Ms. Mischler when he was the General Counsel for the Administrative Office of the Courts. He was personally involved with the issue of Ms. Mischler's official record videos being missing. He was personally involved in giving Stites and Harbison PLLC a 40 thousand dollar no bid personal service contract defending the wrongdoing of the Kentucky Courts. This is the same Stites and Harbison PLLC who as trustee, allowed the insurance fraud to occur with KSBIT in paragraph 71 of this complaint.

142.    Upon information and belief, Circuit Executive assigned the attorney who wrote Ms. Mischler's memo to the panel to intentionally falsifying it. Further, he knew Rule 45 local rules would allow the issue to escape notice of a qualified judicial officer.

143.    Local Rules of the Sixth Circuit Court of Appeals allow the Circuit Court Clerk to act as a judicial officer to rule on procedural motions.

144.    Ms. Mischler is entitled to an Article III Judge who has been vetted by Congress to rule on all her motions.

145.    Sixth Circuit Court of Clerk Deborah Hunt has not been nominated by the President of the United States, nor approved by Congress to be a judicial officer deciding motions in the Federal Courts.

146.    Someone rubber stamped Deborah S. Hunt's signature to a order denying Ms. Mischler redress for the Def. Matt Bevin default stating it was cured.  He did not file a leave of motion to allow a late answer thus, it cannot be cured without that leave being granted by the District Court.

147.    Ms. Hunt, a graduate of the University of Kentucky lawsuit likely went to law school with some of the defendants in this complaint in addition to not being qualified to sign a order denying Ms. Mischler relief.

148.    The standard Federal Rule of Procedure Rule 45 does not grant the Clerk the authority to sign orders of any type.  The Sixth Circuit Court of Appeals local rules granting authority to the Clerk of procedural orders exceeds Constitutional authority to write local rules.

### COUNT VIII BIVENS ACTION TO REDRESS VIOLATIONS OF THE FIRST AMENDMENT RETALIATION

149.    The Plaintiff reiterates all the allegations from paragraphs 1 to 148 herein.

150.    On July 3rd, 2018;  Federal Agent Shane Baumgardner, in furtherance of the conspiracy of Defendants listed herein, and under color of law, knowing it was a pretext came to Ms. Mischler's home without warning to accuse her of going to Kentucky and disclosing information about Judge Greg Van Tatenhove and the bribery scheme he was involved in with Defendant Trout, Defendant Bevin, a judicial bribery scheme to further the conspiracy to constructively Repeal the Affordable Care Act by Medicaid wavier.

151.    Ms. Mischler exercised her first amendment right to speech on Twitter asking a reporter Joe Gerth to investigate the judicial bribery in March 2018 making it impossible for Ms. Mischler to be unlawfully bribing or leverage the bribery scheme against Judge Greg Van Tatenhove for

favor.  Further she had exercised free speech to write about it at the Sixth Circuit Court of Appeals. Thus at all times, Agent Shane Baumgardner knew the allegation was a pretext to retaliate and intimidate Ms. Mischler from exercising further free speech.

152.    Defendant V.P., and the other listed Defendants in the Medicaid waiver, including non-defendant Department of Justice employees assured Agent Baumgardner and John Doe that they would not be held accountable for harassing Ms. Mischler over her free speech exercise.  Further, the Defendants knew that sending the F.B.I. to Ms. Mischler's home would terrify her elderly sick father as an effort to retaliate and prevent future free speech exposing their criminal conduct out of fear for F.B.I. visit without reason causing undue stress worsening her fathers health condition.

153.    Further, Ms. Mischler had civil litigation taking place in the Sixth Circuit Court of Appeals that would expose the bribery scheme and Agent Baumgardner and Joe Doe were attempting to chill her First Amendment Right to filing at the Sixth Circuit.

### COUNT IX   BIVENS ACTION TO REDRESS VIOLATIONS OF THE FOURTH AMENDMENT

154.    Ms. Mischler reiterates paragraphs 1 through 154 herein.

155.    Without probable cause to start an investigation or obtain a warrant with Ms. Mischler having publicly requested reporters to investigate the Def. Bevin/Def. Trout/Judge Van Tatenhove bribery scheme; under color of law Def. Baumgardner and Def. John Doe violated Ms. Mischler's right to privacy at her home and to be secure in her belongs guaranteed under the Fourth Amendment of the Constitution.

156. Def. John Doe and Baumgardner under color of law attempted to coerce Ms. Mischler into voluntarily giving KY DCBS documents lawfully in her possession to the F.B.I. to give to Def.

Bevin in preparation of litigation between Ms. Mischler and Def. Bevin at the Sixth Circuit Court of Appeals.

157.    Def. Baumgardner and Doe knew that Ms. Mischler was a caretaker for elderly sick father and by their mere presence would terrify her father in an attempt to make Ms. Mischler turn over the documents in fear.

## COUNT X   BIVENS ACTION TO REDRESS VIOLATION OF FIFTH AMENDMENT AND 14TH AMENDMENT DUE PROCESS

158.    Paragraphs 1 through 157 are reiterated herein.

159.    Knowing that Ms. Mischler had not committed a crime nor threatened Judge Greg Van Tatenhove; On July 3, 2018 and  under color of law, Federal Agent Baumgardner and John Doe went to Ms. Mischler's home without notice, and tried to entrap her into statements as a type of forced incrimination by accusing Ms. Mischler of threatening to go to Kentucky and disclose the judicial bribery involving Def. Bevin, Def. Trout and Judge Van Tatenhove.

160.    Defs. V.P. Pence, Trout, Amb. Craft, Bevin, conspired to send Defs. John Doe and Agent Baumgardner due to criminal conduct they were engaging in with the constructive repeal of the Affordable Care Act through Medicaid waiver and the judicial bribery scheme enacted to ensure Medicaid wavier would win in Federal District Court.

161.    This was the same due process violation taken against General Mike Flynn where under a pretext; Federal Agents tried to entrap him with perjury at the direction of the Obama White House where it is now disclosed former Vice President Biden suggested the crime of Logan Act to be used against General Flynn before any criminal procedure had begun.

**COUNT XI   DECLARATORY ACTION AGAINST CHIEF JUDGE GUY COLE; JUDICIAL CONFLICT OF INTEREST IGNORED BY SIXTH CIRCUIT COURT OF APPEALS**

162.    Ms. Mischler reiterates the paragraphs 1 through 161 herein.

163.    The Sixth Circuit Court of Appeals panel ignored the conflict of interest of Judge Greg Van Tatenhove having his lover, Def. Trout and son Cooper Van Tatenhove working for Def. Bevin. Either the panel was bribed, or the Sixth Circuit Panel does not believe that Judge receiving a financial benefit from a litigant is not a conflict or interest, or Chief Executive Mark Theriault interfered with the regular administration of justice and assigned an in house attorney willingly to withhold necessary information from the in house memorandum from the Panel or IN ANOTHER ALTERNATIVE, that somehow Sixth Circuit Court of Appeals Judge Amul Thapar, who failed as U.S. Attorney to prosecute the crimes that lead to this case being filed influenced the proceedings.[45]

164.    Further, the Sixth Circuit Court of Appeals also failed to address propriety or rather impropriety of letting a 19 year old white friend of Judge Greg Van Tatenhove write habeas corpus memorandums deciding whether individuals, statistically to be African Americans to help the Judge decide how to rule, inherently leaving out important factual basis due to the 19 year old having no law degree and only finished his first year of college.   Ms. Mischler raised this issue showing Judge Van Tatenhove's lack of mental competence.

---

[45] Attorney Jonah Stevens original domestic violence petition stated that Ms. Mischler was going to commit specific acts of violence IN THE FUTURE. This was in 2002 and eighteen years later NO ONE HAS HELD him accountable for falsifying a domestic violence petition or the many other actions that took place out of this falsified petition. This includes misconduct by the Pike County Circuit Court Clerk failed to make Stevens swear to the obviously false statement though the document states on its face that it is required to be sworn too. **U.S. Attorney Amul Thapar's office knew about this fraud upon the court and DID NOTHING because it would have interfered with his personal political ambition to become a Sixth Circuit Court of Appeals Judge.**

165.   Ms. Mischler requests the Sixth Circuit to order Chief Judge Guy Cole to answer if the judicial conspiracy herein is a conflict of interest, or if he states it is then to explain how in house attorneys failed to bring notice of the to the Panel in their order denying Ms. Mischler relief.

### COUNT XII  DECLARATORY ACTION AGAINST CHIEF JUDGE GUY COLE; UNWRITTEN PROCEDURAL RULES WITH NO DUE PROCESS NOTICE TO THE AFFECTED LITIGANTS ARE UNCONSTITUTIONAL

166   Ms. Mischler reiterates paragraphs 1 through 165 herein.

167.   As explained by Judge Richard Posner in his book, the Sixth Circuit Panels do not read the briefs drafted by pro se litigants.  They only read the briefs rewritten by unnamed, unidentified in house attorneys subject to bribery are those that the Pro Se Litigants never get to inspect for accuracy.

168.   Mark Theriault, who has personal knowledge of KY Administrative Office of Courts destroying Ms. Mischler's official court records when he was General Counsel; is now Chief Executive, and a supervisor of all attorneys assigned to rewrite Ms. Mischler's brief.

169.   The Sixth Circuit Court of Appeals falsified a finding that Def. Bevin was not in default.

170.   The Sixth Circuit Court of Appeals Clerk then signed an order stating Def. Bevin was in default but the default was cured.  The default was never cured because Def. Bevin was required to file a motion for leave of the court to cure the default and never did so.

171.   Ms. Mischler requests declaratory action against Chief Judge Cole to produce the name of all attorneys who rewrote Ms. Mischler's brief and falsified the memorandum that the Judicial Panel decided without reading Ms. Mischler's brief.

172.   Further, Ms. Mischler's request the District Court to require Chief Judge Cole to answer why he thinks it is Constitutional to withhold knowledge from pro se plaintiffs that their briefs are

rewritten and why the memorandum of law by the in house attorneys should not be filed in the court case giving Due Process Notice to allow pro se litigants to correct factual mistakes by the attorneys.[46]

### COUNT XIII DECLARATORY ACTION AGAINST CHIEF JUDGE COLE WHAT CONSTITUTIONAL AUTHORITY DO CLERK OF COURTS HAVE TO BE SIGNING AND AUTHORIZING JUDICIAL ORDER

173.    Def. Bevin can not cure his answer default without filing a motion for permission to do so.

174.    Def. Bevin did not file for permission to cure default.

175.    Sixth Circuit CLERK Deborah Hunt signed an ORDER under the amended local Rule 45 that gives her permission to sign procedural orders.

176.    Clerk Hunt made a factual statement, not supported in fact that Def. Bevin cured his default has been cured.  It was not cured because he never requested leave to file a late answer.

177.    Ms. Mischler is requesting Chief Judge Guy to answer why the Sixth Circuit Court of Appeals think it has constitutional authority to rewrite Rule 45 in the local rules that gives authority to issue factual finding orders to the Clerk of Court.

178.    It appears that Sixth Circuit Court of Appeals in house attorneys are acting as both Judge, Clerk, and attorneys in pro se litigation denying equal protection with other types of litigants. Likely, the same unnamed in house staff attorney that falsified the original brief for Ms. Mischler probably also research and falsified the factual finding that the Bevin default had been cured when it was ignored and never given leave to be filed.

---

[46] Obviously the pro se plaintiff can point out mistakes in a motion to reconsider.  HOWEVER, this adds an extra burden in litigation not faced by other litigants and all the malfeasant attorney has to do to hide their negligence is to falsify another memorandum to the panel about the motion to reconsider.

**COUNT XIV & XV & XVI BIVEN RELIEF, DECLARATORY ACTION AGAINST SENATE LEADER MITCH MCCONNELL AND SECRETARY ALEX AZAR FOR FAILING TO ACKNOWLEDGE AND ADDRESS VIOLATION OF ADMINISTRATION FOR CHILDREN AND FAMILY AND KENTUCKY COMMITTING INTENTIONAL VIOLATIONS OF 42 U.S.C. 5106A AND 5108 AND THAT NO INDIVIDUAL CAN BE LISTED AS A CHILD ABUSER OR HAVE STATE CHILD ABUSE RECORDS AGAINST THEM UNLESS THEY HAVE BEEN CHARGED UNDER THE CRIMINAL LAWS**

179.    Ms. Mischler reiterates paragraphs 1 through 178 herein.

180.    Ms. Mischler request declaratory relief against Senator McConnell that the failure of the Governor of Kentucky to sign the state plan under of 42 U.S.C. 5106a and 5108 is a federal matter, not state as he insisted in his letter attached herein. Leader McConnell had a duty to Ms. Mischler as his constituent and failed because the federal funding coming to impoverished was more important to Leader McConnell than the fraud of the federal funding causing harm to Kentuckians.

181.    Ms. Mischler requests declaratory relief against Sec. Alex Azar that he and his predecessors allowed Kentucky to violate child welfare laws and still receive federal funding under 42 U.S.C. 5106a and 5108 and that Sec. Azar has a duty to take action under 42 U.S.C. 5108 to take action upon notice to prevent that harm to Ms. Mischler by KY DCBS and now must claw back all child welfare funding from Kentucky from the first time KY violated child welfare laws and stop all child welfare funding to Kentucky.

182.    42 U.S.C. 5106a requires Kentucky to have a child abuse database that the state plan will ensure Constitutional protections that Kentucky will give due process notice to individuals placed as a child abuser on that database and reported as a child abuser to Federal authorities by being on the database.

183.    Ms. Mischler requires declaratory relief to require Secretary Azar to either produce the due process notice that she had a dependency case under Kentucky Revised Statute Chapter 600 and the certified letters of each time she was listed as a child abuser.  When Secretary Azar cannot produce these documents because they do not; Ms. Mischler requests a Bivens remedy against Secretary Azar and an order that all child abuse and neglect databases are unconstitutional without a criminal conviction and that no child abuse neglect record can exist in state and federal records unless a criminal trial has been brought against the accused.

### COUNT XVII        DECLARATORY ACTION AGAINST A.G. WILLIAM BARR

184.    All paragraphs 1 through 183 are incorporated herein.

185.    May 2019; As a attorney general noticed that on July 3, 2018 that F.B.I. Agent Shane Baumgardner and John Doe came to Ms. Mischler's home on an impossible allegation to harass, retaliate, entrap and try to illegally gain documents under a false pretense:  A.G. Barr took no action to protect the rights of Amy Mischler but allowed employees under his supervision to further the harm by denying a timely FOIA for Ms. Mischler's 302's to cover up involvement of V.P. Pence in sending the F.B.I. to Ms. Mischler's home.  Ms. Mischler has the right to be protected from criminal conduct by the Defendants and A.G. Barr's negligent providing her equal protection of the criminal laws.

186.    Ms. Mischler requests a declaratory ruling that A.G. Barr failed to protect Ms. Mischler granting her equal protection of the law for ignoring the illegal misconduct of Def. Agent Baumgardner and John Doe under his supervision.

### COUNT XVIII.  42 U.S.C. 1985(2)

187.    Ms. Mischler reiterates the entirety of paragraph 1 through 186.

188.    Defendants Bevin, Trout, V.P. Pence and others as alleged were involved in a conspiracy to constructively repeal the Affordable Care Act through Medicaid waiver.  A furtherance of this Medicaid wavier was the judicial bribery of Judge Greg Van Tatenhove by the Defendants to ensure any legal challenge against the Medicaid Wavier would fail.

189.    July 3, 2018:  F.B.I. Agent and John Doe under color of law were sent by V.P. Pence and the other Medicaid waiver conspiracy to intimidate, threaten an impossible Federal Criminal charge, and entrap Ms. Mischler at her home without any advance knowledge that the visit would take place.

190.    Ms. Mischler is also a witness and plaintiff against Def. Matt Bevin whose agent LeeAnn Veatch was noticed on June 28, 2018 that Ms. Mischler retained records that the KY DCBS had unlawfully destroyed to obstruct justice in the litigation.

**COUNT XIX.   DECLARATORY ACTION TO PREVENT EXECUTIVE ORDER ON SAFE POLICING FOR SAFE COMMUNITIES ISSUED JUNE 16, 2020 TO BE ENFORCED BEFORE DEFAMATORY KY AND FLORIDA SOCIAL WORKER RECORDS ARE ADDRESSED BY DEF. BARR, DEF. AZAR AND FLORIDA GOVERNOR**

190.a   All paragraphs 1 through 190 are incorporated herein.

191.    Section 4(b) of the Executive Order creates social workers to work with law enforcement agencies to "address situations".

192.    HHS and Secretary have failed to enforce social worker regulations with 42 U.S.C. 5106a 5108. This has harmed Ms. Mischler with falsely being put on child abuser databases with out due process notice and even as late as 2018 with a Social Worker in an adult services cases stating that Ms. Mischler was mentally ill and falsifying the facts to cover up hospital malfeasance.

193.   Fact:  the Florida Social worker never asked Ms. Mischler if she received mental health services. [She does not].

194.   Fact: the Florida Social worker never asked Ms. Mischler if there was ever an adjudication. regarding her mental health.  [There is not]

195.   Fact: the Florida Social worker by omission withheld pertinent facts that Ms. Mischler had power of attorney and durable power of attorney for healthcare drafted by a licensed attorney by Ralph Mischler Sr. request before he was incapacitated.  The Florida Social Worker left the pertinent fact the brother was attempting to hasten his fathers death through and ordered the hospital negligence not turn his father every two hours that caused the bedsores.  The Florida Social Worker without ever meeting with Ms. Mischler; falsified the facts the bedsores were created at another hospital.  Ms. Mischler has photographic evidence when the bedsores occurred that the Florida Social Worker did not want to see.  Fact;  the Florida Social Worker was required to give Ms. Mischler a copy HIPPA and Notification of Rights form but withheld it from her intentionally so Ms. Mischler couldn't call the supervisor whose name was on the form.  Fact: Florida social worker never actually looked at the bedsores on the client but relied on false representations from the hospital that caused the bedsores.

196.   Ms. Mischler did complain after her father's death forwarding the bedsore pictures to DCF regional who did nothing to resolve the Florida Social worker defaming Ms. Mischler claiming she was mentally ill or the fact the Florida Social Worker falsified her report and failed to get actual evidence, but relying on the abusers side of the story to write the report.  Meanwhile, a year and half later Florida maintains defamatory state records that still state that Ms. Mischler is mentally ill.

197. Kentucky never held accountable any of its social workers who committed felonies falsifying child welfare records on Ms. Mischler to interfere with her child custody between her and her ex husband.

198. Kentucky never held accountable any of its social workers found by it's 2007 OIG Report to have committed crimes. The Commonwealth Attorney only submitted the social worker misdemeanors to the grand jury withholding the felonies of falsifying state records and claimed all the criminal acts were subject to a one year statute of limitation of prosecution.

199. Ms. Mischler requests an injunction that Florida and its Governor cannot enforce any of the provisions of the June 16, 2020 Presidential Executive Order where she resides until Florida holds accountable the social workers who defamed her in Florida State records stating she is mentally ill, correct the fraud by the FL DCF in their records and create a citizen bill of rights against social workers to prevent further defamation.

200. If Def. Sec. Azar cannot be trusted to perform mandated Congressional duties under 42 U.S.C. 5108 or correct harms of former Secretaries; he cannot be entrusted to execute duties mandated to him under said Executive Order Section 4.

201. Further, if Def. A.G. Barr cannot be trusted to address F.B.I. misconduct noticed to him personally by tracked mail in May 2019; A.G. Barr cannot be trusted to enact the provisions of said Executive Order.

## 28 U.S.C. 1746 DECLARATION

202. Pursuant to 28 U.S.C. 1746, I, Amy Mischler declare under penalty of perjury that the foregoing is true and correct to the best of my ability.

Executed on July 2, 2020.

## REQUESTED RELIEF

203.    WHEREFORE, Ms. Mischler respectfully to grant the relief she has requested herein in addition damages in the amount of 10% of the federal funding that the Administration of Children and Families gave nationally to the states from 2002 until the present where KY continued to defame Ms. Mischler that she was a child abuser, 10% of all domestic violence funding to the Kentucky Administrative Office of the Courts and the Kentucky Attorney Generals Office from the years 2002 until the present from the Department of Justice, 10% of all funding the Kentucky Administrative Office of the Courts from court improvement grants from the Administration of Children and Families from 2002 until the present, 10% of all federal funding from Florida DCF from October 2018 until to the present, and punitive damages based on the amount of all damages claimed herein from the Defendants who sent the F.B.I. to harass me at my home, July 3, 2018.

204.    A receiver over Administration of Children and Families to audit and oversee the fraud that is going on in ACF.

205.    A receiver over the Kentucky Administrative Office of the Courts, the Kentucky Attorney Generals Office, and the KY DCBS.

206.    Any and all relief as the Court deems just and proper including injunctions to prevent further retaliation.

Dates: 7/2/2020                                                          Respectfully submitted,

Amy Mischler
1120 Palm Court
Okeechobee, Florida 34974
863-801-1877
ajmischler@yahoo.com